UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RAUL PEREZ,

    Petitioner,

v.                                      Case No.: 2:26-cv-0009-SPC-DNF

WARDEN *et al.*,

    Respondents,
_____/

**OPINION AND ORDER**

Before the Court is Raul Perez's Petition for Writ of Habeas Corpus (Doc. 1). The Court ordered the respondents to respond by January 13, 2026, and the docket reflects that the clerk promptly served the petition on the attorney general and the local United States Attorney's office. The respondents did not file a response to the petition, and it is ripe for review.

**A. Background**

Raul Perez is a 67-year-old native and citizen of Cuba who entered the United States as part of the Mariel boatlift in 1980 and was paroled into the country. Perez was convicted of several crimes in the 1990s. On September 30, 2009, the Department of Homeland Security ("DHS") commenced removal proceedings by issuing a notice to appear. Perez was ultimately ordered removed, but the government was unable to execute the removal order. On

November 2, 2010, Perez was released on an order of supervision. Perez has complied with the terms of the order.

On November 10, 2025, Perez reported to an Immigration and Customs Enforcement ("ICE") office for regularly scheduled reporting as required by the order of supervision. ICE took Perez into custody. According to a notice of revocation of release, ICE determined there is a significant likelihood of removal in the reasonably foreseeable future. Perez argues ICE's revocation of his release violated his substantive and procedural due process rights, the *Accardi*[1] doctrine, and applicable federal regulations. He also argues the respondents have no legal authority to detain him at Alligator Alcatraz.

**B. Jurisdiction**

The Court has an obligation to examine its jurisdiction over this case *sua sponte*. *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020). In cases with similar facts, the government has argued two sections of the Immigration and Nationality Act ("INA") strip the Court of jurisdiction. The first states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings,

---

[1] *Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

2

>adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The Court has also considered the INA's "zipper clause," which states:

>Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9). The zipper clause only applies to claims requesting review of a removal order. *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Perez does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, Perez challenges the legality of his detention based on the process used to revoke his release, and he alleges the respondents lack legal authority to detain him at Alligator Alcatraz. Judgement in Perez's favor will not impair the government's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

**C. Due Process**

The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976). Courts looks to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Perez's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. A DHS officer found Perez eligible for supervised release in 2010. Since then, Perez has kept his criminal record clean, he has complied with all terms of supervision, and he proved he is not a flight risk by attending his reporting to ICE as required. There is no indication ICE considered these facts when revoking release. Also, execution of the removal order appears unlikely. Cuba's longstanding refusal to accept the return of Mariel Cubans is well-documented. *See, e.g.*, *Clark v. Martinez*, 543 U.S. 371, 386 (2005) (the government conceded it was no longer involved in

5

repatriation negotiations with Cuba). And ICE has not notified Perez it intends to remove him to a third country.

What is more, ICE did not follow the correct regulations. According to the notice served on Perez, ICE decided to revoke release "pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 214.13." (Doc. 1-3 at 2). Both regulations explicitly do not apply to Mariel Cubans. *See* 8 C.F.R. §§ 241.4(b)(2) and 241.13(b)(3)(i). Rather, a separate regulation—8 C.F.R. § 212.12—governs parole determinations and revocations respecting Mariel Cubans. It requires a Cuban Review Panel to review parole decisions, including revocation. The panel must review the record, interview the noncitizen, and make a recommendation based on certain enumerated criteria. The review can be suspended if the Cuban Review Plan Director determines the "detainee's prompt deportation is practicable and proper." 8 C.F.R. § 212.12(g)(1). ICE did not follow those procedures here. The Court recognizes significant value in the safeguards required by § 212.12. They ensure immigration detention serves its statutory purposes and is used in accordance with the laws enacted by Congress.

Third, the government has not established any legitimate interest in Perez's continued detention. Immigration detention has two statutory goals: to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690. Perez's

detention serves neither purpose. The immigration official who considered his circumstances in 2010 determined that he should be release under an order of supervision, and he has since remained out of trouble and complied with the terms of supervision.

The Court finds that ICE violated Perez's right to due process by revoking his parole without complying with applicable regulations and detaining him without reasonable notice and a meaningful opportunity to be heard. *See United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error" (cleaned up)).

### D. Conclusion

For the reasons stated above, the Court finds Perez's detention violates his right to due process under the Fifth Amendment. Perez's challenge to the respondents' authority to detain him in Alligator Alcatraz is moot, as is his emergency motion for a stay of removal proceedings pending resolution of this action (Doc. 4).

Accordingly, it is hereby

**ORDERED**:

Raul Perez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED in part**.

1. The respondents shall release Perez from custody within 24 hours of this Order. The respondents shall facilitate Perez's transportation from the detention facility by notifying his counsel when and where he can be collected.

2. All other requested relief is **DENIED**.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on January 19, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1

8